NICOLA T. HANNA
United States Attorney
PATRICK R. FITZGERALD
Assistant United States Attorney
Chief, National Security Division
JUDITH A. HEINZ (Cal. Bar No. 176264)
Assistant United States Attorney
Senior Litigation Counsel, National Security Division
JAMES C. HUGHES (Cal. Bar No. 263878)
Assistant United States Attorney
Tax Division
MELANIE SARTORIS (Cal. Bar No. 217560)
WILLIAM M. ROLLINS (Cal. Bar No. 287007)
Assistant United States Attorneys
Terrorism and Export Crimes Section
KHALDOUN SHOBAKI (Cal. Bar No. 232864)
Assistant United States Attorney
Cyber & Intellectual Property Crimes Section
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone:     (213) 894-7280/5615/7407/0759
     Facsimile:     (213) 894-2927
     E-mail:    judith.heinz@usdoj.gov
                james.hughes2@usdoj.gov
                melanie.sartoris@usdoj.gov
                william.rollins@usdoj.gov
                khaldoun.shobaki@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 18-50(B)-JAK |
|---|---|
| Plaintiff, | GOVERNMENT'S CONSOLIDATED OPPOSITION TO DEFENDANT YI-CHI SHIH'S MOTIONS IN LIMINE NOS. 3 AND 4 TO EXCLUDE EVIDENCE OF CHINESE GOVERNMENT PRACTICES |
| v. | |
| YI-CHI SHIH, aka "Yichi Shih," aka "Yuqi Shi," et al, | Hearing Date: April 4, 2019 Hearing Time: 8:30 a.m. Location: Courtroom of the Hon. John A. Kronstadt |
| Defendants. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Judith A. Heinz, James C. Hughes, Melanie Sartoris, William M. Rollins, and Khaldoun Shobaki, hereby files its consolidated opposition to defendant Yi-Chi Shih's motion in limine nos. 3 and 4 to exclude evidence of Chinese government practices.

This motion is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: March 14, 2019            Respectfully submitted,

                                 NICOLA T. HANNA
                                 United States Attorney

                                 PATRICK R. FITZGERALD
                                 Assistant United States Attorney
                                 Chief, National Security Division

                                         /s/
                                 _____
                                 JUDITH A. HEINZ
                                 JAMES C. HUGHES
                                 MELANIE SARTORIS
                                 WILLIAM M. ROLLINS
                                 KHALDOUN SHOBAKI

                                 Assistant United States Attorneys

                                 Attorneys for Plaintiff
                                 UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

For at least ten years, from no later than January 2006 through no earlier than January 2016, defendant Yi-Chi Shih ("defendant") conspired to obtain and export unlawfully from the United States to the People's Republic of China ("PRC") items controlled for national security reasons under United States law.  Defendant's motions in limine numbers 3 and 4 seek to exclude evidence regarding the Chinese government's interest in United States military technology and items, including the MMICs at issue in the case.  While styled as distinct motions, they seek to exclude the same category of evidence for many of the same reasons.  Accordingly, the government files a consolidated response to defense motions in limine nos. 3 and 4.

Despite the charges in the case and the overwhelming evidence produced in discovery, defendant states in motion in limine no. 3 that the case "is not about national security" and that testimony "about Chinese efforts to obtain restricted technology is irrelevant to the charges."  (Mot. No. 3 at 1.)  Defendant is wrong.  He seeks to exclude testimony of government witnesses, specifically Dr. Sandison and Federal Bureau of Investigation ("FBI") Special Agent Robert Berger,[1] under Federal Rule of Evidence ("FRE") 403 arguing that their testimony is "irrelevant to the charges" and "inflammatory in the current political environment."  (Id.)  He claims the

---

[1] The government has addressed the anticipated testimony of these witnesses in greater detail in its opposition to defendant's motion in limine number 2, which also seeks to exclude their testimony.  Rather than repeat it here, the government incorporates that discussion and the exhibits to the government's opposition herein.

1

government is attempting to put defendant "on trial based on his ethnicity," in violation of the Fifth Amendment. (Id.)

In motion in limine no. 4, defendant similarly seeks to exclude such evidence on FRE 401, 402, and 403 grounds, again arguing, "evidence relating to Chinese companies or individuals with no discernable connection to the crimes charged here is utterly irrelevant," "unfairly prejudicial," and a "waste" of time. (Mot. No. 4 at 1-2.)[2]

Subsequent to defendant's filing this motion in limine, on March 14, 2019, the government disclosed Peter L. Mattis, M.A. to testify regarding the following: (1) the efforts and methods used by entities and individuals in the People's Republic of China ("PRC") to obtain information about restricted U.S. technology, including semiconductors, to enhance and promote the PRC's MMIC production capabilities; (2) the control of Qing'n International Trading Co., Ltd, aka Qing'an International Trading Group ("QTC") by the PRC's People's Liberation Army, and the use of front companies by QTC to avoid international scrutiny in the procurement of export controlled goods and sensitive technologies; and (3) the stated policy of the PRC to develop a powerful military and to do so by means of military-civil fusion like that shown by the evidence in this case with respect to QTC, Chengdu Gastone Technology Co., Ltd., Chengdu Electronics Technology Group Corporation 29 Research Institute ("CETC 29"), and other entities. The government also expects that Mr. Mattis will provide some background and explanatory testimony about

---

[2] Defendant also suggests the government has not complied with discovery obligations. The government has provided defendant with extensive discovery, is mindful of its discovery obligations, and will continue to comply with them.

2

Chinese business organizations and structures, as it pertains to the entities at issue in this case. Although, understandably, defendant's motions do not specifically seek to exclude the testimony of expert witness Peter L. Mattis, M.A. by name, the government recognizes the general category of information the motions seek to exclude includes that testimony as well.

The government does not intend, as defendant suggests, to present evidence "with no discernable connection to the crimes charged" or the defendant and his co-conspirators. (Id.) Rather, the government will present evidence consisting of defendant's own documents and those of his co-conspirators, including investors in China. (See e.g., Ex. B to Gov.'s Opp. to Def. MIL 2 (attaching defendant's power point).) Government witness testimony and other evidence on these topics will provide the appropriate context to the jury to understand the evidence and decide the facts and charges in this case.

The government's presentation of such evidence will square directly with defendant's conspiracy with individuals and entities to build a foundry in China to fill the PRC's void with respect to MMICs that have civilian and military applications; to illegally export items to the PRC that are controlled for export due to national security reasons; to defraud a United States company to obtain military-grade, export-controlled MMICs; to launder money to pay for those MMICs; to conceal his bank accounts in the PRC from the United States government to cover up his crimes; and to lie to the FBI about the export and testing of the MMICs. (See Dkt. 223 Second Superseding Indictment.) Defendant suggests the government seeks to prove "guilt by association." (Mot. 4 at 2.) To the contrary, the

government seeks to prove defendant's conspiracy and knowing and willful criminal acts through his own words and deeds and those of his co-conspirators.[3]  However, those words and deeds often took place in a foreign country, where the government controlled and financed the deeds at issue, and those deeds involved technology unfamiliar to most people, expert testimony is essential to the jury's understanding of the evidence.

**II.   THE EVIDENCE IS ADMISSIBLE UNDER THE FEDERAL RULES OF EVIDENCE**

   **A.   The Evidence is Relevant to the Crimes Charged**

The government will not seek to introduce at trial irrelevant evidence regarding Chinese individuals and entities that are unrelated to defendant or the charges.  The government will, however, provide evidence through witnesses and documents that explain defendant's efforts in the PRC to develop MMICs with military applications for the benefit of the PRC, and to describe the individuals and entities with which he was involved.  Defendant's

---

[3] Defendant's motions contain multiple media and political references that have no place in this criminal prosecution and appear intended to inflame emotions and "the current political environment." (Mot. No. 3 at 1; see id. at 3 (discussing the "media attention" about the Huawei investigation as "salacious and inflammatory"); id. at 4 (discussing trade-related actions involving China by the "Trump administration"); Mot. No. 4 at 4 (discussing the "highly publicized" Huawei indictment.").  The government objects and respectfully requests the Court to admonish defendant to refrain from such tactics during trial.  The government will not elicit testimony at trial regarding the media attention or prosecution involving Huawei.  The term appears in the evidence.  (See, e.g., Exhibit B to the Governments Opposition to Defendant's Motion in Limine No. 2 to Exclude Testimony of Government Expert Witnesses (attaching defendant's power point) at i-40 (listing "Huawei," among others, on a list of "Major Customers").)  The term "Huawei" may not be understood by all jurors, so a testifying case agent will briefly explain, for example, that it is a large Chinese telecommunications company.  The government will restrict any testimony to the facts and circumstances of this case.

4

efforts to use FRE 401, 402, and 403 to deprive the jury of this highly probative evidence should be rejected.

FRE 402 states "relevant evidence is admissible" unless precluded by the Constitution, a federal statute, the FRE, or other rules prescribed by the Supreme Court. Fed. R. Evid. 402. FRE 401 provides that "[e]vidence is relevant" if "(a) it has *any* tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401 (emphasis added). "[T]o be 'relevant' evidence need not be conclusive proof of a fact sought to be proved or even strong evidence of the same. All that is required is a 'tendency' to establish the fact at issue . . . the fact to be proved may be ultimate, intermediate, or evidentiary; it matters not, so long as it is of consequence in the determination of the action." United States v. Curtin, 489 F.3d 935, 943 (9th Cir. 2007) (en banc). The information that defendant seeks to exclude far surpasses this low threshold.

The information defendant asks the Court to exclude is relevant to prove defendant's knowledge and willfulness in violating IEEPA and the other crimes charged in the Second Superseding Indictment. As an example, Exhibit B to the Government's Opposition to Defendant's Motion in Limine No. 2 to Exclude Testimony of Government Expert Witnesses includes one of defendant's many power points reflecting his plan to build a semiconductor manufacturing foundry in China. As demonstrated in the document, *inter* alia, the evidence in the case includes equipment required to build defendant's foundry, the fab layout, and personnel, including defendant (id. at i-26, i-27, i-28, i-29, i-32, i-33, i-34, i-48, i-69 through 76); analysis of the

global semiconductor market (which does not include any foundries in China), costs, and profitability (id. at i-2, i-3, i-13, i-30, i-56); information about investors in defendant's foundry (id. at i-36); uses for the MMICs, including civilian and military (id. at i-4 through i-12, i-20, i-24, i-36, i-43, i-51); defendant's desire to expand the semiconductor market into China (id. at i-36, i-37, i-38, i-39, i-40, i-41); the "Superior Performance of GaN," (id. at i-50, see also i-52, i-53); and other technical information that a jury cannot be expected to understand without the aid of expert testimony.

Defendant's own power point includes a map of the world and states, "Semiconductor industry is one of the key strengths of a country.  We plan to fill the gap of III-V semiconductor capability in China."  (Id. at i-13.)  Defendant's "investment objectives" depict both military and civilian applications.  (Id. at i-36.)  The slide describes the "[o]bjectives we strive for" as including "within the first five years . . . achieve market dominance: by 2015, #1 in China, by 2020, #1 in the world."  (Id.)  Clearly, the information defendant seeks to exclude about China is highly relevant to the case.

Dr. Sandison's testimony, for example, will assist the jury to understand the significance of the fab layout and equipment depicted in the power point, including the slide referring to "embargoed equipment;" defendant's business plans and strategies to manufacture MMICs in China; and their civilian and military uses, including these items in the context of the foundry being in China for purposes of China.  (See, e.g., id. FBI 302 of Interview with Dr. Sandison at YC_SHIH_00013944-13947, discussing the power point (referred to as file 2013-08-10)).)

Additionally, Mr. Mattis's testimony will, for example, assist the jury to understand the context for the military references in defendant's power point, including that one of the "shareholders" identified in the power point, Qing'n International Trading Co., Ltd, aka Qing'an International Trading Group ("QTC"), is controlled by the PRC's People's Liberation Army, and that QTC uses front companies to avoid international scrutiny in the procurement of export-controlled goods and sensitive technologies. (See, e.g., id. at i-36.) Moreover, Mr. Mattis will be able to explain to the jury that another of the named "shareholders" in the power point is CETC 29. This slide also reflects defendant's "investment objectives" depicting both military and civilian applications, and describes the objective as being "#1 in China" by 2015, and "#1 in the world" by 2020. (Id. at i-36.)

Given defendant's proposed jury instructions, the government expects defendant to challenge the government's proof of his knowledge and willfulness. The evidence (here, a power point prepared by defendant and found on one of his digital devices) showing the Chinese government's interest in the MMICs tends to prove defendant knew the items were controlled for export to the PRC for national security reasons and is directly relevant to establishing the motive for the conspiracy and other charged activity, and defendant's knowledge and willfulness when he committed the charged crimes. See United States v. Mousavi, 604 F.3d 1084, 1092-94 (9th Cir. 2010).

**B.   The Evidence is Not Unfairly Prejudicial**

Defendant's argument that the evidence should be excluded under Rule 403 fails. FRE 403 provides, that a "court may exclude relevant

7

evidence if its probative value is *substantially* outweighed by a danger of . . . *unfair* prejudice . . .[and] wasting time." Fed. R. Evid. 403 (emphases added). Notably, Rule "403 favors admissibility." United States v. Hankey, 203 F.3d 1160, 1172 (9th Cir. 2000); see also United States v. Valesquez, 64 F.3d 844, 849 (3d Cir. 1995) (noting a "strong and undeniable preference for admitting any evidence having some potential for assisting the trier of fact") (quotation omitted)). "The district court has broad discretion to admit potentially prejudicial evidence under Rule 403." United States v. Rizk, 660 F.3d 1125, 1132 (9th Cir. 2011). Excluding evidence under FRE 403 is an "extraordinary remedy to be used sparingly because it permits the trial court to exclude otherwise relevant evidence." United States v. Patterson, 819 F.2d 1495, 1505 (9th Cir. 1987) (quoting United States v. Meester, 762 F.2d 867, 875 (11th Cir. 1985)); see also United States v. Dodds, 347 F.3d 893, 897 (11th Cir. 2003) ("we have also recognized that Rule 403 is an extraordinary remedy which the district court should invoke sparingly, and the balance ... should be struck in favor of admissibility.") (internal quotations omitted).

As the Ninth Circuit recognized,

> Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403. Unless trials are to be conducted as scenarios, or unreal facts tailored and sanitized for the occasion, the application of Rule 403 must be cautious and sparing. Its major function is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect.

Hankey, 203 F.3d at 1172 (quoting United States v. Mills, 704 F.2d 1553, 1559 (11th Cir. 1983)). "Unfair" prejudice under Rule 403

8

"means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403, Commentary.

The strong measure of excluding probative evidence under Rule 403 is unwarranted in this case. The government must be permitted to prove its case with relevant evidence, even if that evidence is inherently prejudicial. See Hankey, 203 F.3d at 1172. The government must prove that defendant acted knowingly and willfully. Evidence that he was conspiring with individuals and Chinese government entities to violate United States export controls is highly relevant to the question of the defendant's knowledge and intent when he conspired to violate the export laws, concealed foreign bank accounts, fraudulently sought access to a United States company's computers and MMICs, laundered money, and lied to the FBI about his activities in China. Expert testimony and other evidence regarding the entities in the indictment and modus operandi of the Chinese government to obtain restricted United States items will be tied to the evidence in the case, including defendant's own documents. The experts' testimony and other evidence seek simply to illuminate for the jury unfamiliar areas to place the evidence in proper context in furtherance of the trial's truth-seeking purpose and is plainly properly admitted in this case.

Additionally, with a twenty-day defense case trial estimate, the defendant is expected to contest that he performed the acts alleged in the indictment with the requisite knowledge and mental state to violate the law. Defendant claims in his motions that his "business dealings in China" were "lawful." (Mot. 4 at 2.) Defendant's Disputed Proposed Post-Trial Jury Instructions contain multiple

9

apparent defenses speaking to a wide-range of topics, including, inter alia, that technology was already published or educational (Def. Disp. Post-Trial Jury Inst. dkt. 309 at 9-11, 14), university-based "fundamental research" or business-based "fundamental research" not subject to "specific national security controls" (id. at 12-13), included in a patent application prepared "to be executed and returned to the United States for subsequent filing in the U.S. Patent and Trademark Office" (id. at 15), "specially designed for telecommunications purposes" (id. at 16), and not included in various other license exceptions (id. at 17-19). Defendant also seeks a "good faith" instruction with respect to the tax charge. (Id. at 35.) While the government submits these are improper jury instructions, they demonstrate defendant's intent to try to convince the jury he did not have the knowledge or intent to commit the charged crimes. Expert testimony is needed to assist the jury to understand and evaluate the evidence showing that defendant was operating in China with Chinese government entities to obtain restricted United States technology.

Defendant wants to claim his actions were innocent, while preventing the government from presenting evidence relevant to his guilt. The Ninth Circuit warned against this type of improper "sanitation" of trials. Hankey, 203 F.3d at 1172. Any prejudice incurred is entirely appropriate: "[r]elevant evidence is inherently prejudicial." Id. Further, Rule 403 does not operate to require that a trial be "scrub[bed] . . . clean of all evidence that may have an emotional impact." United States v. Ganoe, 538 F.3d 1117, 1124 (9th Cir. 2008) (quoting United States v. Morales-Aldahondo, 524 F.3d 115, 120 (1st Cir. 2008)). See also, e.g., United States v. Dhingra,

371 F.3d 557, 565-66 (9th Cir. 2004) (finding that evidence of conduct that "may be disturbing to some members of the jury does not mean that Rule 403 precludes its admission.").

As described above, the information is directly illustrative of defendant's motive, intent, capabilities, and knowledge of, and role in, an ongoing conspiracy and the other charged crimes. Defendant's political rhetoric and general objections that the evidence is "inflammatory" does not render it substantially unfair. Certainly, the evidence is not being "dragged in by the heels for the sake of [its] prejudicial effect." Hankey, 203 F.3d at 1172. It is offered for its direct substantive relationship to the crimes.

The Court should reject defendant's claim that the information is "entirely unrelated to the case at hand," and should be excluded because it would waste time. (Mot. 3 at 5.) The government intends only to introduce evidence that is *relevant* and *related* to the case at hand. Its probative value substantially outweighs any concerns about time. Defendant's reliance on United States v. Scholl, 166 F.3d 964, 974 (9th Cir. 1999), is misplaced. In Scholl, the court excluded expert testimony because it was duplicative of other evidence and testimony. Id. Here, defendant seeks to exclude *all* testimony and evidence on the topic.

**III. DEFENDANT'S FIFTH AMENDMENT ARGUMENT FAILS**

Defendant's Fifth Amendment claim is unavailing. Defendant makes a bald assertion that the challenged expert testimony will violate his Fifth Amendment right to a fair trial, "by encouraging the jury to consider [defendant's] guilt or innocence in light of his race." (Mot. 3 at 6-8.) Not so. The expert testimony defendant

11

seeks to exclude does not appeal to racial or ethnic generalizations or bias.

The two cases upon which defendant relies are distinguishable on their facts. (Mot. 3 at 6-7.) Both involved evidence about the drug trafficking practices of certain countries or ethnic groups. The evidence was improper because it consisted of ethnic generalizations not tied to the evidence in the case. See United States v. Cabrera, 222 F.3d 590, 596 (9th Cir. 2000) ("repeated references to Cuban drug dealers had the cumulative effect of putting the Las Vegas's Cuban community on trial, rather than sticking to the facts of [the] drug offenses"); United States v. Nobari, 574 F.3d 1065, 1076 (9th Cir. 2009) (finding the district court abused its discretion by admitting argument about "ethnic generalizations," but finding the error harmless). In contrast here, the government intends to introduce evidence about the government of the PRC and the entities named in the evidence -- not generalized ethnic representations.

**IV. CONCLUSION**

For the foregoing reasons, defendant's motions in limine nos. 3 and 4 should be denied.